IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs May 17, 2017, at Knoxville

**KENNETH HAYES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 09-02707       Lee V. Coffee, Judge

_____

**No. W2016-01522-CCA-R3-PC**

_____

The Petitioner, Kenneth Hayes, appeals the denial of his petition for post-conviction relief in which he challenged his convictions for reckless aggravated assault, two counts of aggravated assault, criminal attempt to commit the intentional killing of an animal worth over $1000, theft of property over $1000, and evading arrest and his effective sentence of forty years, eleven months and twenty-nine days in confinement. On appeal, the Petitioner contends that he was denied his right to the effective assistance of counsel because trial counsel failed to raise sufficiency of the evidence in the motion for a new trial, trial counsel failed to object to the application of enhancement factors during the sentencing hearing, and trial counsel failed to object to the trial court's determination that the Petitioner was a Range II offender. After review of the record and applicable law, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Gregory D. Allen, Memphis, Tennessee, for the appellant, Kenneth Hayes.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Steve Ragland, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

**Trial**

The facts underlying the Petitioner's convictions were summarized by this court on direct appeal as follows:

On January 21, 2009, at approximately 1:00 a.m., the owner of Broadway Pizza, Dewana Ishee, received a phone call from the security company alerting her that a break-in had occurred at her family business in Memphis, Tennessee. Mrs. Ishee and her husband, Denny Ishee, immediately drove to Broadway Pizza where they saw the Defendant's van backed up to the front door of their restaurant and two men carrying the Ishees's 62" Samsung television from the building. The Ishees exited their vehicle and confronted the men, ordering them to set the television down. The men complied, but the Defendant's co-defendant pulled out a pistol as he approached Mr. Ishee. In response, Mr. Ishee fired a gun that he was carrying with him at the time. The co-defendant fled the scene. While this was occurring, the Defendant had taken steps toward Mrs. Ishee, which she interpreted as aggressive movement. She moved forward and grabbed the Defendant around the shoulders and held on to him. During this altercation, the Defendant got into his van with Mrs. Ishee still holding on, halfway in the vehicle with her feet still touching the ground. Meanwhile, two police officers arrived on the scene and saw the van with the Defendant behind the wheel and Mrs. Ishee's legs protruding from the driver side door. The Defendant put the car in drive and accelerated forward, ramming into the police car that had just arrived. Two police officers, at the time, were trying to exit the vehicle. One of the police officers, Officer Jackson, was able to get back into the police car before impact. Officer Watson, however, was unable to get back in to the vehicle quickly enough, and, as a result of the impact, he injured his wrist and fingers. After the impact, Officer Jackson got out of the police car and approached the van with his weapon drawn. Mrs. Ishee had maintained her grasp on the Defendant but released him when Officer Jackson instructed her to do so. Upon being released, the Defendant fled the scene. Officer Jackson followed the Defendant as far as he could and notified the dispatcher of the direction in which the Defendant was fleeing.

Based on Officer Jackson's report, a helicopter and canine unit, comprised of Officer Twilley and his canine partner Gunner, were dispatched to the area of Overton Park. A helicopter unit located the Defendant crouched down in a thickly wooded area and guided Officer Twilley and Gunner to within ten feet of the Defendant's location. After

notifying the Defendant, Officer Twilley released Gunner to apprehend the Defendant. Several seconds after Gunner's release, Officer Twilley heard Gunner make a yelping sound the officer had never before heard. Officer Twilley approached and called Gunner off of the Defendant. Officer Twilley ordered the Defendant to show his hands, but the Defendant refused to comply. Officer Twilley struck the Defendant multiple times on the shoulder and the Defendant still refused to comply so Officer Twilley engaged Gunner again and once Gunner had the Defendant on the ground, Officer Twilley could see the Defendant's hands to ensure he was unarmed. After the Defendant was taken into custody, police officers recovered from the scene a pistol and a knife covered with blood and dog hair. Officer Twilley also found that Gunner was bleeding extensively and immediately transported him to an emergency center for treatment of ten stab wounds. After several weeks of treatment and recuperation from the stab wounds, the canine officer returned to active duty.

After the Defendant was apprehended, police officers transported him back to Broadway Pizza, and the Ishees positively identified the Defendant as one of the two men who had been in possession of their television. A search of the Defendant's vehicle, which the Defendant had abandoned at the Broadway Pizza, revealed a loaded handgun located on the floorboard of the passenger side of the vehicle.

Based upon this evidence, a jury convicted the Defendant of reckless aggravated assault, two counts of aggravated assault, criminal attempt to commit the intentional killing of an animal worth over $1000, theft of property over $1000, and evading arrest.

*State v. Kenneth Hayes*, No. W2010-00309-CCA-R3-CD, 2011 WL 3655130, at *1-2 (Tenn. Crim. App. Aug. 19, 2011), *perm. app. denied* (Tenn. Jan. 16, 2015). For the purposes of this appeal, we note that aggravated assault is a Class C felony, reckless aggravated assault is a Class D felony, theft of property over $1,000 is a Class D felony, criminal attempt to commit the intentional killing of an animal worth over $1,000 is a Class E felony, and evading arrest is a Class A misdemeanor. *See* T.C.A. §§ 39-13-102(e)(1) (Supp. 2009); 39-14-105(3); 39-14-205(a)(1)(B) (Supp. 200939-12-107(a); 39-16-603(a)(3).

The Defendant's sentencing hearing was summarized as follows:

At the Defendant's sentencing hearing, the State entered into evidence the Presentence Investigative Report and a victim impact letter

from Officer Watson, the officer who was injured when the Defendant rammed his van into the officer's police cruiser. In the letter, Officer Watson noted that the Defendant was "reckless without regard to the lives of several police officers whose lives were in jeopardy," that he "caused several thousands of dollars worth of damage to government and private property," and that the injuries Officer Watson sustained from this incident caused him "to be off work for several days and on partial duty for over a month." Officer Watson requested that the Defendant be sentenced to the maximum punishment for his crimes and that consecutive sentencing be imposed.

Mrs. Dewana Ishee testified that, as a result of this incident, she had changed the way her business operates, closing hours, and employee schedules and that she was considering moving her business to a safer area. Mrs. Ishee said that she personally worked at the restaurant every night until closing to ensure her employees are safe and that she carried her gun. She requested that the Defendant receive the maximum sentence in order to convey to business owners in the community that they will be protected. Mrs. Ishee also stated that a maximum sentence would show that all the effort and time put forth by the police in apprehending the Defendant was not wasted.

Mr. Ishee testified that he felt "terrified" and "helpless" as he witnessed his wife being "dragged on the asphalt with her legs hanging out of the van" while the Defendant accelerated his van forward. He reflected that, "[O]ur whole family could have just ended that day and it's just a terrible experience and I hope nobody has to go through that." Mr. Ishee described the atmosphere at work now as filled with "apprehension" and work is no longer "fun." He requested the trial court order the Defendant to serve the maximum sentence.

The Defendant acknowledged that he has had "problems" in Louisiana prior to these incidents. As to his conduct in this case, he said, "I apologize for everything that happened that night even if I did or didn't have nothing to do with it. I apologize." The Defendant maintained that he never intended to hurt anyone and never intended to run into the police car. The Defendant further stated that he never intended to injure the police dog. The Defendant said that he learned a lot during this incarceration and that, given the chance, he would never put himself in a position that would return him to court.

On cross-examination, the Defendant denied that police ever spoke to him or warned him that a police dog was to be released. The Defendant said that he did not know that the animal attacking him was a police dog. He said that, if police had told him they were going to release a dog, he would have surrendered himself. He said he only stabbed the police dog in an attempt to protect himself.

The Defendant acknowledged that he had previously pled guilty to burglary, possession of cocaine, and battery of a police officer and was sentenced to three years [on] probation. He also acknowledged that this probation sentence was revoked at some point, and that he was required to serve the remainder of his sentence.

At the conclusion of the hearing, the trial court sentenced the Defendant to eight years confinement for the reckless aggravated assault conviction, to ten years each for his two aggravated assault convictions, to four years for the criminal attempt to commit the intentional killing of an animal worth over $1000, to eight years for the theft of property over $1000 conviction, and to eleven months and twenty-nine days for the evading arrest conviction. The trial court then ordered that all of the sentences run consecutively to one another for an effective sentence of forty years, eleven months and twenty-nine days confinement in the Tennessee Department of Correction.

*Id.* at *2-3.

## Post-Conviction Hearing

The Petitioner filed an initial post-conviction petition and multiple amended petitions following the appointment of counsel that included issues that the Petitioner does not raise on appeal. On appeal, the Petitioner contends that counsel was ineffective by (1) failing to raise sufficiency of the evidence as an issue in the motion for a new trial and on direct appeal, (2) failing to object to the trial court's alleged improper use of enhancement factors during sentencing, and (3) failing to object to the Petitioner's classification as a Range II offender on the basis of his juvenile status at the time of his prior felony convictions. Our summary of the evidence presented in the post-conviction hearing is limited to those issues raised on appeal.

The first post-conviction relief hearing addressed appellate counsel's failure to file a timely application for permission to appeal to the Tennessee Supreme Court after this Court denied the Petitioner's direct appeal. The Petitioner's appellate counsel testified

that on direct appeal, he challenged the trial court's imposition of the Petitioner's sentence on several grounds. He testified that he did not raise on appeal the issue of sufficiency of the evidence because he "thought that the evidence was incredibly sufficient to support the convictions." He stated that before he drafted the appellate brief, he read the trial transcript and determined that "[t]here was really nothing to say in terms of whether there was sufficient evidence or not." Appellate counsel testified that he filed the application for permission to appeal to the Tennessee Supreme Court one day late and that the clerk informed him that the application would not be accepted. Because the post-conviction court found that the Petitioner's appellate counsel had failed to file a timely application for permission to appeal, the post-conviction court granted the Petitioner a delayed appeal. The Tennessee Supreme Court denied review on January 16, 2015.

The Petitioner renewed his petition for post-conviction relief, and at the subsequent post-conviction hearing, he testified that trial counsel should have proved to the trial court that the Petitioner was a juvenile at the time of a conviction[1] he received in the State of Louisiana, which he alleged would have rendered him ineligible for classification as a Range II offender. The Petitioner stated that he told trial counsel that he wanted his motion for a new trial to include a challenge to the sufficiency of the evidence. The Petitioner stated that trial counsel met and discussed with him Tennessee's sentence scheme. He testified that he informed trial counsel of "rebuttals to enhancement factors" that he wanted to be presented at the sentencing hearing, including that he was not the leader of the offenses committed and that no one died during the offenses. He also testified that he and trial counsel discussed mitigating factors, but he did not remember presenting any to trial counsel. He stated that he wanted trial counsel to object to the finding that he was a leader in the reckless aggravated assault of Officer Watkins. *See* T.C.A. § 40-35-114(2) (Supp. 2008). Likewise, he stated that he wanted trial counsel to object to the finding that there was exceptional cruelty to the victim. *See id.* § 40-35-114(5). The Petitioner noted that this court determined on direct appeal that the trial court erred in finding that the Petitioner was the leader of the offenses and inflicted exceptional cruelty on the victim.

On cross-examination, the Petitioner testified that trial counsel visited him at the jail "maybe once." He conceded, however, that he had "plenty of time" to meet and discuss his case with trial counsel. He stated that trial counsel reviewed his discovery packet "extensively" with him. On re-direct examination, the Petitioner asserted that he was not given notice that he was to serve his sentences consecutively.

Trial counsel testified that he shared discovery that he received from the State with the Petitioner "on several occasions." He testified that he informed the Petitioner that the

---

[1] The Petitioner did not specify which conviction formed the basis of his claim.

State would be able to use his convictions from Louisiana against him at the sentencing phase. He also testified that he nonetheless objected to the State's use of the convictions against the Petitioner. He stated that he explained to the Petitioner that if he were to testify, the State could use his prior convictions against him for impeachment and sentencing enhancement. He also stated that he obtained mitigating evidence from the Petitioner to soften his image, including a picture of the Petitioner with his kangaroo to show that the Petitioner was an animal lover and would "never intentionally hurt an animal." Trial counsel testified that he hoped that the Petitioner's guilty plea to some of the charged offenses would bolster his credibility on the remainder of the charges brought to trial. He also testified that he explained to the Petitioner that he did not have to testify at trial and that testifying would open the door to the introduction of his prior felonies. He stated that he received a motion for consecutive sentencing from the State. He also stated that following trial, he filed a motion for a new trial and an amended motion for a new trial and requested that a new attorney be appointed to represent the Petitioner in case he had committed an error of which he was unaware.

On cross-examination, trial counsel testified that he did not represent the Petitioner on direct appeal. Trial counsel testified that he did not believe the Petitioner was a Range I offender at the time of sentencing.

Following the hearing, the post-conviction court issued an order, denying the petition for post-conviction relief. The post-conviction court found that before his post-conviction relief petition, the Petitioner had never alleged that he was improperly sentenced as a Range II offender because he was a minor at the time of his Louisiana felony convictions. The post-conviction court found that trial counsel "received complete discovery and discussed discovery with the Petitioner." The post-conviction court also found that in the motion for a new trial and amended motion for a new trial, trial counsel "challenged the sufficiency of the evidence, application of enhancement factors and the range of punishment." The post-conviction court declared that it did not find the Petitioner's testimony to be credible and that he "wholly failed to demonstrate how trial counsel was deficient," concluding that the Petitioner did not meet his burden by clear and convincing evidence. The post-conviction court found that the Petitioner failed to show that he was prejudiced by trial counsel's representation, noting that the Petitioner "failed to establish how raising meritless issues on appeal would have made a difference in the results of the trial."

The post-conviction court found that the Petitioner's trial testimony and post-conviction testimony were so contradictory as to amount to "an actual admission of perjury." The post-conviction court then turned to the Petitioner's argument that trial counsel should have objected at the sentencing hearing to certain enhancement factors and his Range II offender classification. The court noted that this court had previously

held that the Petitioner's sentences were appropriate and that "[t]he evidence offered at the [Petitioner's] post-conviction hearing was nearly identical to that offered at the sentencing, the prior ruling was not 'clearly erroneous,' and there has been no change in the controlling law." The court also noted that this court had already determined that the Petitioner was properly sentenced as a Range II offender. The post-conviction court determined that the Petitioner's argument relating to his juvenile status at the time of the Louisiana convictions amounted to a request for habeas corpus relief. The court found that, "the [P]etitioner offered no evidence, except his own testimony, that he might have been a juvenile at the time he was arrested and convicted of felonies in Louisiana." The court concluded that on the grounds of his juvenile status during his Louisiana convictions, the Petitioner was not entitled to relief under habeas corpus, post-conviction, or a motion to correct an illegal sentence.

## ANALYSIS

On appeal, the Petitioner alleges he received the ineffective assistance of counsel when counsel (1) failed to raise sufficiency of the evidence as an issue in the motion for a new trial and on direct appeal, (2) failed to object to the trial court's alleged improper use of enhancement factors during sentencing, and (3) failed to object to the Petitioner being classified as a Range II offender on the basis of his juvenile status at the time of his prior felony convictions. The State argues that the Petitioner failed to meet his burden.

A petitioner is entitled to post-conviction relief if his conviction or sentence is void or voidable due to the abridgment of any constitutional right. T.C.A. § 40-30-103. The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010).

This court may not substitute its own inferences for those drawn by the post-conviction court, and questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). The trial court's legal determinations are reviewed under a purely de novo standard with no presumption of correctness. *Id.* at 457.

The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Ward*, 315 S.W.3d at 465. "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d

208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the accused the right to counsel. This right has been defined as the right to the reasonably effective assistance of counsel, or assistance "'within the range of competence demanded of attorneys in criminal cases.'" *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999)). The overall standard of effectiveness is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

To establish that he received the ineffective assistance of counsel, a petitioner must show both that his lawyer's performance was deficient and that the deficiency resulted in prejudice. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). Deficiency can be shown if the petitioner demonstrates that his attorney's services were below an objective standard of reasonableness under prevailing professional norms. *Id.* A petitioner must demonstrate deficiency by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 687). A reviewing court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. There is a presumption that counsel's acts might be "sound trial strategy," and strategic decisions, when made after a thorough investigation, are "virtually unchallengeable." *Felts*, 354 S.W.3d at 277 (quoting *Strickland*, 466 U.S. at 689-90).

To prevail on the prejudice prong, the petitioner "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (quoting *Vaughn*, 202 S.W.3d at 116). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* A claim may be denied for failure to prove either prong, and a court need not address both if the petitioner has failed to establish either deficiency or prejudice. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

First, the Petitioner argues that trial counsel was ineffective for failing to raise sufficiency of the evidence as an issue in the motion for a new trial and that appellate counsel was ineffective for failing to raise the issue on appeal. Initially, we note that the State asserts that trial counsel raised the issue of sufficiency of the evidence in the motion for a new trial. Upon our review of the motion for a new trial, we agree with the State and hold that trial counsel cannot be ineffective for failing to raise sufficiency of the

evidence because he did, in fact, raise the issue in the motion for a new trial. Therefore, the only issue is appellate counsel's failure to raise the issue on direct appeal.

We agree with the Petitioner that the post-conviction court erred in finding that this court had already determined the issue of sufficiency of the evidence. This court, in fact, noted on direct appeal that the Petitioner did not raise sufficiency of the evidence as an issue for our review. *Kenneth Hayes*, 2011 WL 3655130, at *1 n.1 ("the Defendant does not challenge the sufficiency of the evidence"). Because this issue has not previously been decided by this court, we proceed to the merits of the Petitioner's argument. *See Badgett v. State*, 745 S.W.2d 884, 885 (Tenn. Crim. App. 1987).

The same principles apply in determining the effectiveness of both trial and appellate counsel. *Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel acted objectively unreasonably in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful before the state's highest court. *See e.g.*, *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Aparicio v. Artuz*, 269 F.3d 78, 95 (2nd Cir. 2001); *Mayo v. Henderson*, 13 F.3d 528, 533-34 (2d Cir.1994). To show that counsel was deficient for failing to raise an issue on direct appeal, the reviewing court must determine the merits of the issue. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. *Id.* Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. *Id.* When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. *Carpenter*, 126 S.W.3d at 888 (citing *United States v. Dixon*, 1 F.3d 1080, 1083 (10th Cir. 1993)). Additionally, ineffectiveness is very rarely found in cases where a petitioner asserts that appellate counsel failed to raise an issue on direct appeal, primarily because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.

An appellate attorney is neither duty bound nor required to raise every possible issue on appeal. *Carpenter*, 126 S.W.3d at 887 (citing *King v. State*, 989 S.W.2d 319, 334 (Tenn. 1999)); *Campbell*, 903 S.W.2d at 596-97. An attorney's determination as to the viability of the issues should be given considerable deference. *Carpenter*, 126 S.W.3d at 887; *Campbell*, 903 S.W.3d at 597.

In *Billie Joe Henderson v. State*, this court decided a similar issue to the present one. *See* No. E2005-00806-CCA-R3-PC, 2006 WL 1575138, at *1 (Tenn. Crim. App.

- 10 -

June 9, 2006). This court held that "counsel was not ineffective by failing to raise the issue of the sufficiency of the convicting evidence on appeal," noting that "counsel did not feel that the sufficiency of the evidence was a meritorious issue on appeal." *Id.*, at *9. This court also held that "[c]ounsel's decision not to raise the issue of the sufficiency of the convicting evidence on appeal fell 'within the wide range of reasonable assistance.'" *Id.* (quoting *Burns*, 6 S.W.3d at 462).

Here, appellate counsel testified that he "thought that the evidence was incredibly sufficient to support the convictions." He also testified that after reading the trial transcript, he determined that "[t]here was really nothing to say in terms of whether there was sufficient evidence or not." He stated that in light of his determinations on the sufficiency of the evidence, he decided not to raise the issue on appeal. Accordingly, we hold that appellate counsel's decision to not raise sufficiency of the evidence on appeal did not amount to ineffective representation and was "'within the wide range of reasonable assistance.'" *Id.* (quoting *Burns*, 6 S.W.3d at 462).

Next, the Petitioner argues that trial counsel was ineffective because he failed to challenge the trial court's application of "certain enhancement factors." The Petitioner, however, does not specifically argue which enhancement factors should have been objected to by trial counsel. At the sentencing hearing, the trial court applied no mitigating factors and eight enhancing factors: (1) "The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"; (2) "The defendant was a leader in the commission of an offense involving two ... or more criminal actors"; (3) "The Defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense"; (4) "The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great"; (5) "The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community"; (6) "The defendant possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense"; (7) "The defendant had no hesitation about committing a crime when the risk to human life was high"; and (8) "If a defendant is convicted of the offense of aggravated assault pursuant to § 39-13-102, the victim of the aggravated assault was a law enforcement officer, ... provided, that the victim was performing an official duty and the defendant knew or should have known that the victim was such an officer or employee." T.C.A. § 40-35-114(1), (2), (5), (6), (8), (9), (10) and (19) (Supp. 2008). On direct appeal, this court determined that the trial court misapplied three enhancement factors, holding that the trial court erroneously found that (1) the Petitioner was the leader of his co-defendants, (2) the Petitioner treated the victims of the theft and aggravated assault with "exceptional cruelty," and (3) the Petitioner acted without hesitation when the risk to human life other than the victim was high during the commission of the aggravated assault. *Id.* § 40-35-

114(2), (5), and (10). This court held that when sentencing the Petitioner, the trial court nonetheless imposed "appropriate" sentences. *Kenneth Hayes*, 2011 WL 3655130, at *14. Accordingly, we conclude that the Petitioner failed to establish that trial counsel was deficient or that any deficiency resulted in prejudice.

Finally, the Petitioner argues that trial counsel was deficient for failing to object to the trial court's use of his Louisiana convictions to classify him as a Range II offender. The Petitioner contends that he was a minor at the time of the Louisiana convictions and, thus, it was inappropriate to use them to increase the Petitioner's range from I to II. We note that at the sentencing hearing, trial counsel objected to the use of one of the Petitioner's Louisiana convictions on the basis of the conviction not being serious enough to warrant an increase in range classification.

The State argues that the Petitioner's argument was already addressed on direct appeal because this court determined that he was properly classified as a Range II offender. *Kenneth Hayes*, 2011 WL 3655130, at *6 ("The Defendant, who was sentenced as a Range II offender, had five prior felony convictions. Only two of those felony convictions were necessary to establish him as a Range II offender."). The State contends that the Petitioner's argument is, thus, ineligible for our review. *Cauthern*, 145 S.W.3d at 599 ("When a claim has been previously determined, it cannot form the basis for post-conviction relief."). We note, however, that our court did not directly address the Petitioner's Range II classification. Rather, our court addressed the Petitioner's prior convictions as they applied to the prior criminal history enhancement factor. *Kenneth Hayes*, 2011 WL 3655130, at *6.

The State also argues that the Petitioner's argument relating to his minor status is waived because the issue was raised for the first time at the evidentiary hearing. We note, however, that this court has frequently allowed "a petitioner to present an issue for the first time at a post-conviction evidentiary hearing, even if it was not listed in his petition, and still obtain appellate review of the issue." *Timothy Lamont Thompson v. State*, No. M2015-00846-CCA-R3-PC, 2016 WL 496996, at *4 n.1 (Tenn. Crim. App. Feb. 9, 2016), *perm. app. denied* (June 23, 2016) (citing *James Randall Roskam v. State*, No. M2014-00599-CCA-R3-PC, 2015 WL 3398394, at *6 (Tenn. Crim. App. May 27, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015); *Kevin Allen Gentry v. State*, No. E2013-00791-CCA-R3-PC, 2014 WL 1883701, at *11 (Tenn. Crim. App. May 12, 2014); *Vincent Sims v. State*, No. W2008-02823-CCA-R3-PD, 2011 WL 334285, at *63 (Tenn. Crim. App. Jan. 28, 2011); *Jorge Ariel Sanjines v. State*, No. 03C01-9706-CR-00229, 1999 WL 41834, at *8 (Tenn. Crim. App. Feb. 2, 1999)). As such, we turn to the merits of the Petitioner's argument.

On direct appeal, this court noted that "[a]t least two of the five prior felonies were sufficient to qualify the [Petitioner], pursuant to [Tennessee Code Annotated] § 40-35-106, as a Range II offender for each of his convictions in this case." *Kenneth Hayes*, 2011 WL 3655130, at \*6 n.2. Our review of the records show that the trial court reviewed five Louisiana convictions in its range determination, including convictions for burglary, possession of crack cocaine, and battery of a police officer from 1999, a conviction for unlawful entry of an inhabited dwelling from 1998, and a conviction for possession of a cocaine from 2000. We note that battery of a police officer, possession of crack cocaine, and possession of cocaine in the State of Tennessee are misdemeanor offenses. T.C.A. §§ 39-13-101(b)(1) (Supp. 2009); 39-17-418(c) (Supp. 2009); 40-35-106(b)(5) (Supp. 2009). We also note that misdemeanor offenses are ineligible for use when determining range. *Id.* § 40-35-106(b)(3). Based on the birth date and arrest dates provided in the records from the direct appeal and the post-conviction appeal, we conclude that the Petitioner was indeed a minor at the time of his arrest for unlawful entry of an inhabited dwelling in Louisiana. The records also indicate that the Petitioner was convicted for unlawful entry of an inhabited dwelling in Criminal District Court for the Parish of Orleans. If a defendant commits a felony offense as a juvenile, then he cannot be classified as a "multiple offender" unless the defendant was convicted of the felony in criminal court. *Id.* § 40-35-106(b)(3). We hold that because the Petitioner was convicted of unlawful entry of an inhabited dwelling in criminal court rather than juvenile court, the felony conviction is eligible for use in range determination by a trial court. Moreover, the Petitioner failed to allege or prove that any other convicted offense occurred while he was a minor and whether he was convicted in juvenile court or criminal court.

Our review of the records reveals that the trial court properly considered and applied two prior burglary convictions in its range determination. Although the record is somewhat unclear, at least one of the Petitioner's burglary convictions would be classified as a Class D felony and the other would be classified as either a Class D or E felony in the State of Tennessee. *Id.* § 39-14-402(c), (d). "Prior convictions include convictions under the laws of any other state, government, or country which, if committed in this state, would have constituted an offense cognizable by the laws of this state." *Id.* § 40-35-106(b)(5). The trial court, therefore, properly sentenced the Petitioner as a Range II multiple offender for the instant offenses. *Id.* § 40-35-106(a)(1).

Moreover, we hold that the Petitioner failed to prove that his status as a minor would have prohibited the trial court from using of his Louisiana convictions during sentencing, that trial counsel was deficient for failing to object to the trial court's use of the Louisiana convictions on the basis of his alleged juvenile status, or that he was prejudiced by trial counsel's alleged deficiency. Accordingly, we hold that the Petitioner has failed to meet his burden.

- 13 -

**CONCLUSION**

Based on the foregoing, we affirm the judgment of the post-conviction court.


_____
JOHN EVERETT WILLIAMS, JUDGE